STOKER, Judge.
This is a worker’s compensation case. Claimant Keith Lachney[1] appeals a judgment denying his claim for permanent total disability benefits, penalties, and attorney fees. The issues presented in this appeal are primarily factual. We affirm in part and reverse in part.
FACTS
This worker’s compensation case arises from an accident on April 4, 1985. Keith Lachney, who was working for James E. Delaney as a brick mason, stepped in a rut and twisted his right foot and ankle. He fractured the first and second cuneiform and suffered a severe sprain of the medial plantar ligament, all of which caused the first metatarsal and part of the cuneiform to drift medially and interiorly, resulting in a deformity of the foot with lateral deviation. Subsequently, Lachney developed severe arthritis in his foot.
After the accident, Delaney’s worker’s compensation insurer, Great American Insur- *48 anee Co., began paying Laehney temporary total disability benefits based on his prior wage of $16 per hour for a forty hour week. Great American continued to pay weekly benefits and medical expenses through the end of December 1989, after which it terminated all benefits on the basis of the opinion of Lachney’s primary treating physician, Dr. Douglas McKay. Dr. McKay, an orthopedist, had released Laehney to work without restriction as long as he wore his orthopedic boots. Great American also refused to guarantee payment for any more orthopedic boots for Laehney.
RULING BY THE ADMINISTRATIVE HEARING OFFICER
Laehney filed this claim for continuation of his worker’s compensation benefits and medical expenses, as well as for penalties and attorney fees.
The hearing officer denied his claim for continued benefits, finding that Laehney was not permanently totally disabled and that he had a 25% permanent partial disability in his right foot. The hearing officer further found that Laehney was able to work and that he had not been truthful when he stated that he lived in constant pain, since he refused to undergo the recommended surgery to alleviate his pain. The surgery had been recommended by Dr. Cedric Lowery, an orthopedic surgeon who evaluated Laehney’s foot at the request of Great American, and by Dr. Frank Anders, an orthopedic surgeon who referred Laehney to Dr. McKay, as well as by Dr. McKay, Lachney’s primary treating physician. Finally, the hearing officer found that Great American had not been arbitrary and capricious in terminating Laehney’s benefits.
Laehney appeals this judgment, contending the hearing officer erred in failing to find he is permanently totally disabled under the substantial pain doctrine. Laehney also claims that Great American should have borne the burden of proving he was not totally disabled after it consented to pay him benefits. Laehney argues that Great American did not have the right to terminate benefits without first seeking a ruling from the Office of Workers’ Compensation (OWC) and, thus, Great American was arbitrary and capricious in terminating his benefits.
PERMANENT DISABILITY
Laehney argues on appeal that the hearing officer erred in failing to award him permanent total or permanent temporary disability benefits pursuant to LSA-R.S. 23:1221(2) or (4) and the jurisprudential odd lot doctrine, which was allegedly in effect at the time of Lachney’s injury.
The 1983 amendments to the Worker’s Compensation Act established a stricter standard for proving permanent total disability. The plaintiff must prove by clear and convincing evidence that he is unable to engage in any employment or self-employment, regardless of the nature of employment or self-employment. The existence of pain suffered by the employee is not relevant to a determination of total permanent disability. The nature, character, location and availability of employment are similarly irrelevant. Augustine v. Paul Wall Truck Line, Inc., 603 So.2d 770 at 775 (La.App. 3d Cir.), writ denied, 608 So.2d 193 (La.1992), and cases cited therein; LSA-R.S. 23:1221(2)(d). Also, Paul v. Gipson, 614 So.2d 1275 (La.App. 2d Cir.1993).
Laehney testified that he is a self-employed farmer. He works full time supervising his employees, who do the hard physical labor, in his small farming operation. Therefore, Laehney cannot be classified as permanently totally disabled, despite the fact that he allegedly has been working in pain. See LSA-R.S. 23:1221(2)(b). The “substantial pain” or “odd lot” doctrine was no longer applicable to determinations of permanent total disability at the time of Laehney’s injury.
Moreover, Laehney does not qualify for permanent partial disability. His primary treating physician, Dr. McKay, assigned a 25% disability rating to Lachney’s right foot. Dr. Anders and Dr. Lowery each assigned a 20% disability rating to his foot. At the time of Lachney’s injury, a claimant must have *49 had a disability rating greater than 50% to qualify for permanent partial disability benefits under LSA-R.S. 23:1221(4).
Therefore, the hearing officer did not err in failing to award Lachney permanent total or permanent partial disability benefits. We turn now to consideration of supplemental earnings benefits (SEB).
SEB
If the claimant is employed or self-employed, then the burden of proof is on the claimant to prove by clear and convincing evidence, that a work related injury resulted in his inability to earn wages equal to 90% or more of his wages at the time of injury. However, if the claimant is not employed or self-employed or is earning less than he is able to earn, the burden is on the employer to show the employee is physically capable of performing employment which is offered or available. LSA-R.S. 23:1221(3)(c)(i); Daigle v. Sherwin-Williams Co., 545 So.2d 1005 (La.1989); Guillory v. City of Lake Charles, 614 So.2d 165 (La.App. 3d Cir.1993); Hebert v. Grey Wolf Drilling Co., Inc., 611 So.2d 674 (La.App. 3d Cir.1992). To determine whether the claimant has established a prima facie case for entitlement to SEB, the court must consider whether he presented sufficient evidence to prove he was unable to earn the requisite percentage of his preinjury wages. Hinton v. Scott Hydraulics, Inc., 614 So.2d 820 (La.App. 2d Cir.1993), and eases cited therein.
Under LSA-R.S. 23:1221(3), an injured employee is entitled to SEB if, by reason of the injury, the employee is unable because of substantial pain, to engage in any employment or self-employment. The circumstances necessary to support such an award must be established by clear and convincing proof, unaided by any presumption of disability, that solely as a consequence of substantial pain, plaintiff was unable to engage in any employment or self-employment. Rosella v. Dede’s Wholesale Florist, 607 So.2d 1055 (La.App. 3d Cir.1992), and eases cited therein.
Pain experienced by a claimant seeking compensation benefits is a question of fact to be resolved by the trier of fact. The physical inability of a claimant to return to work due to substantial pain is a question of fact and will not be disturbed unless clearly wrong. The degree of pain is a factual determination which depends to a great extent on the trial judge’s evaluation of the claimant’s credibility. Hollier v. American Bldg. Systems, Inc., 503 So.2d 701 (La.App. 3d Cir.1987), and cases cited therein. See also, Adams v. NOLA Fleet Shipyard, 617 So.2d 88 (La.App. 4th Cir.1993); Lewis v. Orleans Materials, 614 So.2d 316 (La.App. 4th Cir.1993).
A court of appeal may not set aside a trial court’s finding of fact in the absence of “manifest error” or unless it is “clearly wrong”. Where there are two permissible views of the evidence, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989); Alfred v. Mid-South Machine, Inc., 594 So.2d 937 (La.App. 3d Cir.1992). Also, Villagomez v. Howard Trucking Co., 569 So.2d 1006 (La.App. 3d Cir.1990).
At trial, Lachney testified that he is unable to return to work as a brick mason due to the constant “nagging” pain in his foot and his inability to stand up for very long due to pain. Lachney also testified that he has had to substantially reduce the extent of his farming operation because he is unable to do much of the work except supervise. He stated that he has not applied for a job since the accident, but that if Dr. McKay released him to work, he would accept a job if he liked the work and if it paid him as well as his brick mason job did. He did not want to return to work as a brick mason due to foot pain.
In 1986, Lachney’s treating orthopedic surgeon, Dr. Douglas McKay, recommended ar-throdesis surgery to fuse the navicular cuneiform of the first metatarsal joint in an effort to correct the deformity and lateral deviation of Lachney’s foot and alleviate the pain. Lachney repeatedly refused to undergo surgery due to fear that it would not be effective. Later, when Lachney also developed *50 nerve symptoms, Dr. McKay pointed out that the surgery would also include tarsal tunnel release. Lachney still refused to have surgery, although Dr. McKay warned him that generally the longer one waits before having surgical intervention the poorer the results.
Dr. McKay has prescribed supportive, orthopedic lace-up boots for Lachney to wear. In March 1989, Dr. McKay noted that, although Lachney contended he was not working, he was wearing his orthopedic shoes out very quickly. On July 10, 1989, in a letter to Great American Insurance Co., Dr. McKay noted, “I could not understand how [Lach-ney] could wear out so many shoes and not be working, but he complains of pain and the fact that he wears out the shoes.... I do not understand how he wears out the shoes so frequently and does not want surgery.... I have to believe that he is working in some position in order to wear boots out this fast.” Dr. McKay also stated that he had not placed any restrictions on Lachney’s work activities while wearing his boots. Finally, in a letter to Great American, dated December 19,1989, Dr. McKay stated, “At the incredible rate that Mr. Lachney wears out his boots, I think that he should be able to go back to work as a mason.”
Clearly, Dr. McKay did not believe that Lachney was in as much pain as he stated. The hearing officer did not believe so either, and specifically stated in her written reasons for judgment, “I do not feel the claimant is truthful in his testimony regarding living with pain[,] but I do also feel that this is due largely to his refusal to undergo the surgery recommended by Dr. McKay and suggested by Dr. Lowery and Dr. Anders.” They both believed that if Lachney were in as much pain as he complained of, he would have opted for surgery to alleviate it and would be less active than he seems to be.
Dr. Lowery, who evaluated Lachney once, stated that he believed him to be capable of occupations which do not require prolonged periods of standing, walking, heavy lifting, carrying, squatting, or climbing. Dr. Anders reached the same conclusion, but did not continue to treat Lachney after he referred him to Dr. McKay in July 1986. Dr. McKay treated Lachney from mid-1986 through March 1989.
Martin J. Leger testified that he investigated Lachney’s claim for Great American. He videotaped Lachney driving two different tractors for four to five hours for each of two days, operating most of the other farm equipment, and throwing chains that bind crates of produce onto trucks.
On Lachney’s behalf, his girlfriend, his son, and his father testified that Lachney frequently complained of pain in his foot and that, although he was a hard worker prior to the accident, he was unable to do as much work afterwards.
We find that Lachney failed to make a prima facie case for entitlement to SEB. Neither his primary treating physician nor the hearing officer believed he was in as much pain as he claimed, and both believed he was capable of working. Lachney testified that he had not tried to find a job, other than his own farming operations. On the basis of the record, he failed to make a prima facie showing that he was unable to work due to substantial pain or that he was unable to earn 90% of his preinjury wages. See Daigle v. Sherwin-Williams Co., supra; Austin v. Howard Discount Stores, Inc. 569 So.2d 659 (La.App. 2d Cir.1990). Therefore, although the hearing officer apparently did not consider an award of SEB, she did not manifestly err in failing to award it.
PENALTIES and ATTORNEY FEES
Lachney next contends that Great American did not have the right to terminate benefits without first seeking a ruling from the OWC as provided in LSA-R.S. 23:1310.1 (as written in 1985). Lachney argues that Great American’s payment of benefits without an initial ruling from the OWC was tantamount to a transaction or compromise, which has the same effect as a judgment. Therefore, it was necessary for Great American to seek a review of the “judgment”, in accordance with LSA-R.S. 23:1310.1, prior to terminating benefits.
We disagree with this interpretation of the law for which, we note, Lachney cites no *51 authority. Great American commenced payment of benefits in accordance with its statutory duty. This did not have the effect of a transaction or compromise, or a judgment. LSA-R.S. 23:1204 states that neither the furnishing of medical services nor payments by the employer or his insurance carrier shall constitute an admission of liability for worker’s compensation. Also, it is well established that an employer may terminate compensation benefits on the basis of competent medical advice. See Hebert v. Grey Wolf Drilling Co., Inc., supra; Lang Pham v. Delta Petroleum Co., Inc., 503 So.2d 149 (La.App. 5th Cir.1987).
The hearing officer did not manifestly err in finding that Great American was not arbitrary and capricious in terminating Lach-ney’s weekly worker’s compensation benefits.
However, we find that Great American was arbitrary and capricious in refusing to guarantee payment for Lachney’s new orthopedic boots. Dr. McKay’s report, on which Great American relied in determining that Lachney was able to return to work, specifically stated that Lachney was released to work without restrictions if he wore orthopedic boots. Great American had a duty, under LSA-R.S. 23:1203, to pay for Lach-ney’s orthopedic boots. It was patently arbitrary for Great American to rely on the part of Dr. McKay’s report that was favorable to it and to ignore the part that was favorable to Lachney. Therefore, the hearing officer manifestly erred in failing to find Great American was arbitrary and capricious in refusing to guarantee payment for Lachney’s orthopedic boots. We award attorney fees of $5000 to Lachney in accordance with LSA-R.S. 23:1201.2.
DISPOSITION
For the reasons given, the judgment of the lower court is reversed as to the denial of attorney fees. It is hereby ordered, adjudged and decreed that the successors of plaintiff, Keith Lachney, be and they are hereby awarded $5000 attorney fees against Great American Insurance Co. and James E. Delaney. In all other respects, the judgment of the trial court is affirmed. Costs of this appeal are assessed one-half to plaintiffs successors and one-half , to defendant.
AFFIRMED in PART: REVERSED in PART: RENDERED.

. In the briefs submitted on appeal counsel for both parties assert that the plaintiff is deceased, but that the proper substitution of parties was made.