J2GONZALES, Judge.
This is an appeal by an employer, Gaylord Container Corporation (Gaylord), from a decision rendered in favor of one of its former employees, Silmon O. Seal (Seal), for workers’ compensation benefits. Gaylord challenges the hearing officer’s determination that Seal (1) contracted an occupational disease within the meaning of La. R.S. 23:1031.1, (2) was entitled to supplemental earnings benefits, and (3) was entitled to penalties, interest, and attorney fees due to Gaylord’s arbitrary and capricious handling of his claim.
FACTS AND PROCEDURAL HISTORY
Seal, a 59-year-old male, worked at Gay-lord’s paper mill from 1957 until 1994. For the last fifteen years of his employment, Seal worked as a bogol operator, mixing and “cooking” various chemicals with the application of steam. This process exposed Seal to fumes from the chemicals which caused him to develop a chronic cough.
In September 1994, Seal was referred to Dr. Henry Jackson, a physician certified in the fields of internal medicine and pulmonary diseases, with complaints of a chronic cough and shortness of breath. After running several tests on Seal, Dr. Jackson diagnosed him with severe bronchitis. Dr. Jackson attributed Seal’s condition to his exposure to the chemical fumes at his employment. In a December 31, 1994 letter to Gaylord’s workers’ compensation insurer, Dr. Jackson stated that the severity of Seal’s condition made it “potentially injurious” to his health to continue to work in such an environment.
In March 1995, Seal filed a disputed claim for compensation with the Office of Workers’ Compensation, alleging that he had been “exposed to noxious chemicals over an extended period of time causing severe lung damage” and that Gaylord had refused to pay him benefits after being apprised of his condition.
The matter was tried before an Office of Workers’ Compensation hearing officer on October 5, 1995. The hearing officer signed a decision in favor of Seal and against Gay- *116 lord[1] on November 27, 1995, (1) ordering that Gaylord pay Seal supplemental ^earnings benefits up to 520 weeks beginning August 1, 1994, with a credit for any payments made by Gaylord’s insurer and (2) assessing Gaylord with penalties, interest, and attorney fees of $4,500.00 because it “acted arbitrarily and captiously (sic) in [its] handling of this matter.”
Gaylord appeals fi-om this adverse decision, asserting the following assignments of error:
1. The trial court committed legal error in determining that Seal sustained an occupational disease as defined by La. R.S. 23:1031.1.
2. The trial court committed legal error in determining that Seal is entitled to supplemental earnings benefits pursuant to La. R.S. 23:1221(3).
3. The trial court committed manifest error in determining that the employer acted arbitrarily and capriciously in the handling of this matter, and awarding penalties, interest, and attorney fees.
OCCUPATIONAL DISEASE
According to La. R.S. 23:1031.1(A), every employee who is disabled because of the contraction of an occupational disease as defined by the Workers’ Compensation Law shall be entitled to compensation benefits the same as if the employee received personal injury by accident arising out of and in the course and scope of his employment.
In its first assignment of error, Gaylord challenges the hearing officer’s conclusion that Seal suffered from an occupational disease within the meaning of La. R.S. 23:1031.1. Section B of the statute defines an occupational disease as:
that disease or illness which is due to causes and conditions characteristic of and peculiar to the particular trade, occupation, process, or employment in which the employee is exposed to such disease. Occupational disease shall include injuries due to work-related carpal tunnel syndrome. Degenerative disc disease, spinal stenosis, arthritis of any type, mental illness, and heart-related or perivascular disease are specifically excluded from the classification of an occupational disease for the purpose of this Section.
The claimant in a workers’ compensation action based on an occupational disease must establish by a preponderance of the evidence that there is a disability which is related to the employment-related disease. Vargas v. Daniell Battery Manufacturing Company, Inc., 93-1249 (La.App. 1st Cir. 5/20/94), 636 So.2d 1194, 1197. An occupational disease has been defined as one which is the result of a series of events, |4often imperceptible in nature, which are eventually evidenced in the manifestation of a disability. The plaintiff must show that he contracted the disease during the course of his employment and that the disease was the result of the nature of the work performed. Vargas v. Daniell Battery Manufacturing Company, Inc., 636 So.2d at 1197.
Whether a plaintiff is disabled as a result of an occupational disease or illness is a question of fact, and it is well settled that an appellate court will not set aside a finding of fact unless it is clearly wrong or manifestly erroneous. Stutes v. Koch Services, Inc., 94-782 (La.App. 3d Cir. 12/7/94), 649 So.2d 987, 990, writ denied, 95-0846 (La.5/5/95), 654 So.2d 335; Vargas v. Daniell Battery Manufacturing Company, Inc., 636 So.2d at 1197.
In this case, the hearing officer found that Seal suffered from an occupational disease. In his reasons for judgment, the hearing officer stated:
Claimant as a result of working with chemicals for years at defendant’s plant gradually developed such pulmonary problems that he could no longer work and had to seek medical aid. Claimant would have to incessantly cough although he did not smoke. Claimant testified as to his condition because of the fumes from the chemicals. Two of his fellow workers also testi- *117 fíed as to the effects of the fumes on claimant. They said that claimant would cough until he [would] almost lose his breath and they observed that claimant would have the symptoms of a cold for months at a time. Claimant proved that he suffered an occupational [disease] as set forth in the ... statute.
In addition to the above findings of the hearing officer, we also note that Dr. Jackson’s deposition testimony supports the finding that Seal suffered from a disability caused by an employment-related disease. Based on Seal’s history as a non-smoker who also tested negative for asthma and allergies, Dr. Jackson opined that his severe bronchial inflammation was attributable to his exposure to chemical fumes at his place of employment.
After a thorough review and evaluation of the record, and primarily based upon the testimony of Seal, Seal’s co-workers, and Dr. Jackson, we cannot say that the hearing |5officer’s conclusion that Seal suffered from an occupational disease is clearly wrong or manifestly erroneous.[2]
SUPPLEMENTAL EARNINGS BENEFITS
In its second assignment of error, Gaylord contends that the hearing officer erred in awarding Seal supplemental earnings benefits.
An employee is entitled to supplemental earnings benefits (SEBs) when he has sustained an employment-related injury resulting in his inability to earn wages equal to 90% or more of his wages at the time of the injury. La. R.S. 23:1221(3)(a); Miller v. Roger Miller Sand, Inc., 94-1151 (La.11/30/94), 646 So.2d 330, 335; Morris v. Norco Construction Company, 632 So.2d 332, 334 (La.App. 1st Cir.1993), writ denied, 94-0591 (La.4/22/94), 637 So.2d 163. The purpose of SEBs is to compensate the injured employee for wage earning capacity he has lost as a result of his accident. Hurst v. Baker Sand Control, 94-2463 (La.App. 1st Cir. 10/6/95), 671 So.2d 408, 411. A claimant seeking SEBs must prove that his disability prevents him from earning 90% of his pre-injury wages by a preponderance of the evidence. Proof by a preponderance of the evidence is sufficient when the evidence, taken as a whole, shows that the fact sought to be proved is more probable than not. Farrill v. Hammond State School, 93-1735 (La. App. 1st Cir. 6/24/94), 639 So.2d 449, 450. It is irrelevant whether the claimant is physically able to perform his former job; rather, the relevant question is whether he is partially disabled and unable to earn 90% of his pre-injury wages. Hurst v. Baker Sand Control, 671 So.2d at 412. Whether an employee has proved that he is unable to earn 90% of his pre-injury wages is a question of fact governed by the manifest error/clearly wrong standard. Morris v. Norco Construction Company, 632 So.2d at 335.
Ir,In this case, we find that Seal failed to prove his inability to earn 90% of his pre-injury wages by a preponderance of the evidence. When he left his employment at Gay-lord in August 1994, Seal was earning $17.36 per hour. Dr. Jackson’s testimony establishes that Seal could not return to his position as a bogol operator at Gaylord. However, Dr. Jackson’s testimony also establishes that when Seal was no longer exposed to the chemical fumes, he no longer had breathing problems and most likely will not have any in the future as long as he avoids the type of environment in which he previously worked. Thus, the record does not establish that it is more probable than not that Seal was unable *118 to earn at least 90% of $17.36 per hour in some other position at Gaylord or in some other type of employment. At the time of trial in October 1995, Seal had not worked since August 1994. When asked on cross-examination if he had applied for work anywhere since then, Seal responded negatively. The relevant portion of the trial transcript reads:
Q: Mr. Seal, you haven’t worked since August of 1994; is that correct?
A. Right.
Q: Have you applied for work anywhere since then?
A: No, sir. I looked around for a job. Most of them that I could get was paying minimum wages and that wasn’t near enough you know....
[[Image here]]
Q: Have you asked anyone at Gaylord Container Corporation if you could work there?
A. No, sir. I figured they’d contact [my attorney] being I had to hire him, you know.
[[Image here]]
Q: No one at Gaylord Container Corporation has refused you employment, is that correct?
[[Image here]]
A: No, sir, they haven’t.
At oral argument, Seal’s counsel conceded that the above testimony is the only evidence in the record demonstrating that Seal has carried his burden of proving hisHinability to earn 90% of his pre-injury wages. We conclude that this evidence presented on the issue of inability to earn wages is insufficient to support the award of SEBs. First, Seal’s testimony contains no reference to a “disability” as the cause of his inability to earn 90% of his pre-injury wages; in fact, the evidence indicates that Seal suffers from no residual problems from his contraction of an occupational disease. Further, there is inadequate evidence as to whether Seal can do any type of work, and if he can, how much that work would pay. See Lachney v. Delaney, 628 So.2d 46, 50 (La.App. 3d Cir.1993), writ denied, 93-3090 (La.2/25/94), 632 So.2d 764 and Green v. Cement Products Services, Inc., 526 So.2d 493, 498 (La.App. 1st Cir.), writ denied, 531 So.2d 270 (La.1988). Thus, a determination as to whether Seal can earn 90% of his pre-injury wages is not possible.
We also note that, in support of his SEB claim, Seal argues that Gaylord failed to offer him a position in a location of the plant other than the bogol plant. However, an employer is not obligated to offer a position or prove its availability until an SEB claimant has first carried his burden of proving an inability to earn 90% of his pre-injury wages. See McClinton v. Rapides General Hospital, 93-1295 (La.App. 3d Cir. 5/4/94), 640 So.2d 534, 536, writ denied, 94-1438 (La.9/23/94), 642 So.2d 1290. Thus, for the foregoing reasons, we find that the hearing officer was clearly wrong in awarding Seal SEBs.
PENALTIES, INTEREST, AND ATTORNEY FEES
In assignment of error number three, Gay-lord challenges the hearing officer’s award of penalties, interest, and attorney fees to Seal. Because we conclude that the hearing officer erred in awarding Seal SEBs, we concomitantly conclude that he erred in assessing penalties, interest, and attorney fees against Gaylord.
DECREE
For the foregoing reasons, the decision of the hearing officer against Gaylord Container Corporation and in favor of Silmon O. Seal is REVERSED. Costs of the appeal are assessed against Silmon O. Seal.
CARTER, J., concurs in part and dissents in part with reasons.

. Although the workers' compensation insurer participated as a defendant in the trial of this matter, the decision signed by the hearing officer only names Gaylord as the party liable to the plaintiff.

. Gaylord argues that the hearing officer erred in concluding that Seal suffered from an occupational disease. It is Gaylord's position that Seal was not “disabled” from his bronchial condition because, according to Dr. Jackson, he suffered no residual effects from his exposure to chemical fumes. Although a lack of residual effects may ■ affect a claimant's entitlement to workers' compensation benefits, it does not determine whether the claimant became disabled in the first place as a result of an occupational disease. A "disability” is marked as the time from which it is clear that the employee is no longer able to perform the duties of his employment in a satisfactory manner. Starks v. Universal Life Insurance Company, 95-1003 (La.App. 1st Cir. 12/15/95), 666 So.2d 387, 390, writ denied, 96-0113 (La.3/8/96), 669 So.2d 400. The record establishes that Seal's condition progressed to a level which prevented him from satisfactorily performing his job, thus establishing his disability.